May it please the Court, Matt Sherwood on behalf of Continental Resources. It is an honor to be in front of you today from Amarillo, Texas. These two cases which are being argued together were two cases that were essentially handled together throughout litigation until they were resolved with an agreed judgment. Both the Murphy case and the Richner case were filed in the spring of 2019. Both of these cases are surface damage cases under the North Dakota State Statute for Surface Damages Act, importantly for purposes of what we're considering here today, which is our arguments on appeal that the district court abused its discretion in awarding a certain amount of attorney's fees as well as its decision not to grant us a hearing on those attorney's  The Surface Damages Act does not require any sort of liability finding against Continental. The plaintiffs start out with they are entitled to those damages. So this statute, for purposes of this case, is a simple question of what were the surface damages caused to the Murphys and to the Richners? Did you argue in the district court there should be no fee award under 38-11.1-08 and 09? No, Your Honor. What we argued in the district court can we do that sui sponte? I think on their face they preclude this one. As to whether or not I think it appears on face. As to whether the court can do that sui sponte, I don't know that question. I'd be happy to certainly submit something to the court on that. If the amount of compensation awarded is greater than the amount offered by the developer, the court shall award reasonable attorney's fees. That isn't true here, is it? I see what you're getting at, Judge Logan. I think the statute, we're not taking that position because the statute, when it's referencing the awarding attorney's fees to a landowner as to more than was offered, I think that statute relates to what was offered at the time that the notice of drilling operations was given. That's what I mean. We don't dispute that the landowners in this case received more in compensation than they were offered in that notice of drilling operations. We don't dispute that. The offer that we made that we referenced throughout our briefing is shortly into this case. The settlement offer. Yes, Your Honor. Well, that's what 09 is talking about. Has the settlement offered the amount of anticipated surface damages that you offered up front? Yeah, let me clarify the record on this. So my understanding of the statute, the 3811.1-09, when it's discussing the amount offered versus the amount recovered, that that relates to the amounts that were offered when an operator like Continental makes an offer to resolve surface damages at the time that they're about to engage in operations. We don't dispute that the Richners and the Murphys ultimately recovered more than that was offered in that statutory notice. And when that happens, they're entitled to attorney's fees, is that correct? The statute entitles them to reasonable attorney's fees, yes, Judge Kobisch. Just to make sure I'm following, you're challenging the reasonableness of those attorney's fees? That's correct, Judge Kobisch, yes. And part of why we reference the offer of judgment for both cases is that we think that that's an important factor that the district court did not consider in applying, I think, the fourth factor under Big Pines, which is the amount involved in the results obtained. And we use that... So this was an easy case? Is that what that comes down to? That's a lot of what this comes down to, Judge Kobisch, yes. And since we're addressing that, I'll just go ahead and discuss that factor. So we think that the district court abused its discretion without considering what was offered early on in this case. So we've handled these cases combined throughout. So there was a combined $300,000 that was offered to the Murphys and the Richners in July of 2020. They rejected that offer, continued to litigate for three more years, and then ultimately there was an agreed judgment for about $176,000 combined between the two, which is about 62% of what had been offered to them three years prior. So we don't take the position that that prevents them from recovering fees under 3811.1-09. But we do think that was a crucial factor, and I think this, of course, jurisprudence has said, might be the key factor is the amounts involved in the results obtained. What did the district court say in rejecting that argument? So the district court didn't analyze anything about the damages that were recovered. And that's part of why we think the district court clearly erred on this point. When discussing the amount involved in the results obtained, the only thing the district court talked about was, number one, what's the legislative history and intent of the statute, which we don't believe that the court should even get into the legislative history. But they talked about the statute says that the landowners are supposed to be protected. But the plain language of the statute also says they're only to recover reasonable attorney's fees. Beyond that, the only thing the district court told us when they awarded these fees was that the Richners and the Murphys' rights were at stake. We don't know what rights the district court was referring to, and certainly in this case, Continental has never taken the position that the Richners and the Murphys are not entitled to compensation. We've always said that they're entitled to compensation. And importantly, in a case that we start in our briefing, the Farrar v. Hobby case, which is a U.S. Supreme Court case, the U.S. Supreme Court case says that the idea that you win and protect your rights is not the relevant issue for a court to consider in awarding  It is damages that should be considered. And the district court didn't even discuss or consider the amount involved in the results obtained other than a brief statement within the opinion that noted that, at least in the Farrar v. Hobby case, the fees that were being requested were 700 percent of the damages that were awarded, which the court noted was grossly excessive but made no deduction for that. And as to the simplicity of the case, and I think that is also the other crucial factor amongst the five big-times factors that the district court considered, and that is the time and labor required and the novelty and the difficulty of the questions at issue. So you're not arguing that the district court applied the wrong legal standard. You're arguing that it abused its discretion in weighing the facts underneath the law. That's correct, Your Honor. We're not arguing that the legal standard was incorrect. The district court did apply the North Dakota Supreme Court standards from Big Pines, which is the correct legal standard. Our argument is that, in doing so, it clearly erred in the five categories that it considered. This is not a fair question. The district court in this case knows what it's doing. It's handled this statute before. In your view, what happened here? Maybe it's just that you wanted a hearing and you could have made your case at that point. I don't know. Maybe that's the only answer. Well, and that's certainly one of our big issues in this case, Your Honor. Even though you're not entitled to a hearing, right? Well, we cite to the court, it's an older case, but it still is good law, the Hardeman v. Board of Education case from this circuit in 1983. That's 714 Federal 2nd, 823 Pennside at 825, which says that when there's serious factual disputes on attorney's fees, that a hearing is required. And we timely requested an oral argument and we weren't given one. But as to your other question, Judge Kobe, as to where things went wrong, we certainly are kind of left to guess. The district court's order didn't really give us any guidance on that, in particular on this other important issue of the time and labor required and the novelty and difficulty of the question. I don't think anybody is going to stand up and argue that the damages to the surface of two rural properties where we just installed a saltwater line, a gathering line, and then built up a well pad, that that's a novel or difficult question. In fact, that they don't even have any sort of liability that they have to establish. The question is, what is that worth? And from the word go, 30 days or 60 days into this case, both the Richners and the Murphys disclosed to us that they don't know what their damages are, but that they are consulting with experts who will tell what the damages are. And in a similar vein, when we sent interrogatories and requests for production asking for information on what are your damages, the answer was, we don't know, we'll retain experts. So it's a simple case of get somebody who can tell you what this property is worth, what the value of these damages are, and tell us what you think you're owed and we can potentially fight about it or we can try to resolve it. And for whatever reason, they waited four years to do that. But there was no analysis by the district court on that, nor was there any argument from the Richners or the Murphys as to why this required a bunch of time and labor, what was novel or difficult about these issues. Instead, the district courts ordered... What did the billing records that were submitted indicate was being done? So a lot of things. So we took significant issue with that. So we found in analyzing the records that were submitted, and a lot of this time was spent by an attorney named Todd Sattler who was a 23-year attorney at the time, 952 hours, up to $287,000 in time entries by Mr. Sattler over these two cases that said research. Now, some of them said other things because there's block billing, which is another problem. But we don't know what he's researching, and it's mostly all redacted. They spent $130,000 pursuing third-party discovery from our landman in North Dakota, B.J. Kattermas, only to then have their expert witness not consider any of those facts that they recovered from that third-party landman in making an issue of damages. On top of that, they spent another $80,000 trying to compel Continental and B.J. Kattermas to respond to discovery requests that the district court found to be outside the bounds of what we're trying to do here. They're trying to get every document showing any payment to anybody within these two large gatherings. The court didn't characterize both sides as being out in the weeds. The district court did do that, and we're unsure. The district court didn't really give us any reasoning why they thought that Continental did. And we think that the record shows that we spent basic discovery asking for what your damages are. We took party depositions to figure out what these landowners would say and know, and certainly none of the landowners were going to offer anything about damages. But beyond that, all Continental did was respond to discovery, certainly avoid having to answer some of these discovery requests that were overly broad. But other than that, we're unsure what we did to be in the weeds, and the district court's order gives us no guidance on that. And then the only other thing that the district court said, again, in analyzing this time and labor and novelty and difficulty question was, well, this is what happens when you're litigating businesses like Continental, and we certainly don't know what that meant. Because in this case, Continental has always taken the position that it owes money to the Murphys and the Richners. It was a question of if the Murphys and the Richners didn't like how much was offered, how much do they want? And then four years later when we finally get those numbers, we resolved it with them within six weeks. Unless the court has questions they'd like to address to me now, I'll save the rest of my time for rebuttal. I have some more. I'm now discovering that my problem is because there's, as I read the statute, there are essential facts that neither the briefs nor the district court gave me. The statute says before commencing a legal action, the developer or the landowner has to get an appraisal. What was the amount of ... Let's take Murphy. What was the amount of the appraisal? It's not given to me. I think I see where the issue is, Judge Logan. I'm guessing ... Not yet. I'm guessing you're reading a current version of that statute. That statute was amended this year. The appraisal process that's in the statute, that was not part of the statute at the time this case was litigated. That is a new development within North Dakota. The appraisal process that's in the new statute is not part of what this case was about. I read the new ... I didn't see ... It seems to me ... The appraisal process then says your client gets the appraisal and then you get a chance to amend the initial offer. Then, that's the base point for 09. That is the new statute, Your Honor. That was in the 20 ... I think 2025 amendments. I've read 09 before and now and they basically read the same. If I'm wrong, I'll try to determine if I'm wrong during the break, Your Honor. My recollection was that the previous version of the statute went off of what the offer was under the Notice of Drilling Operations. Under what, say? The Notice of Drilling Operations. It's a statutory requirement that an operator like Continental tell a landowner, that we're coming on your property, we're going to operate, we're going to install these things and we're going to offer you this much. Okay. What were those numbers? I believe in the two Richners, I think they were jointly offered somewhere around $43,000. How much? $43,000, Your Honor. I believe the Murphy statutory offer was around $2,500. Part of what we wanted to show on a factual record, if we were given the opportunity to be heard, was that there were additional negotiations that went back and forth between the parties after that initial offer, which we think would have been relevant for the district court to consider, again, in looking at the fourth factor under Big Pines of the amount involved in the result. Counsel, is this typical to have attorney's fees in multiples of the actual value? We certainly don't think it is. It's certainly in a case like this, which didn't reach trial. I'm not going to sit up here and say that a certain cutoff of a multiple automatically deems something to be unreasonable. I think there are certain cases where that can happen. Our position in this case is, given the simplicity of the statute, the simplicity of the dispute, and the lack of expert depositions or a trial, that there's no justification for it, certainly not from the evidence that was presented to the district court. Thank you. Mr. Brodin? Counsel, can you explain, give some perspective to the disparity between the litigation costs or attorney's fees and the property values here? It seems like the legal business is better than the oil business in some respects. Yes, Your Honor. I'm happy to explain that. What I'd like to say is that it is part of the function of the statute here, and that is why Judge Treanor was talking about some of the legislative history. In North Dakota, we love and support our oil and gas industry. We also love and support our farmers and ranchers, and we support their private property rights. This is directly relevant to Factor No. 4 under Big Pines, but in this very statute, it says, it is the purpose of this chapter to provide the maximum amount of constitutionally permissible protection to surface owners, and it even explicitly says, this chapter is to be interpreted in light of the legislative intent expressed herein. Now, when you look at the damages, let's take the Murphy Damage Award, $76,000. That's typical, because what we're talking about here is drilling operations and production operations, and so when you look at the cases that have been brought under this statute, it's usually something like a five-acre well pad to drill an oil well on, or a gathering line for oil or gas or produced water that's going across a quarter section of a farmer's land. It is not typical that these are going to be high-value cases, but there are novel issues in them, and they are cases, just like in eminent domain cases, that need to be litigated, and sometimes they get litigated all the way through. But this one wasn't, right? I mean, this wasn't, there was no trial here, right? There was no trial, but we were in the midst of trial preparation. We were a day away from expert discovery. But in Fisher, we had an award post-trial where it was smaller than this award, right? I mean, so what was it that was in those billing records that got you to these numbers? Research, for example, I mean, what were the novel legal issues that were at play? So first, very briefly, Judge Kobes, I want to note that in the Fisher case, Continental v. Fisher, where Continental sued them, that was phase two. There was years of litigation prior to that where the Fishers bore their own attorney's fees. So the award in the second half of that does not cover the full award of fees in that case. Now, the other thing I'll point out that Mr. Sherwood did point out is that there were a lot of items in the billing that referenced research, but also referenced any number of separate things, and we put this in the briefing. Now, we did get punished for some of that block billing there, but it's not accurate to say that all of that time was research. What I will say, however, is that when you look at the case law history under this statute, not just the Continental Fisher case, the Mosser case, I had an old case in Federal District Court, Tank v. Petro-Hunt, you look at the Deadwood Canyon Ranch case, maybe not the Deadwood Canyon Ranch, that was a more typical before and after, but a lot of the other cases under this statute, there's a different way to look at the damages theories because what this statute allows for is not just a diminution in the market value of the property, but damages for lost use and access to the property. And so, in the Mosser case, in the Fisher case, what we were looking at is what are companies paying other landowners for a disposal well? And what we got in the Fisher case was five cents a barrel. That's not the typical type of analysis that an appraiser does in a before and after appraisal looking at what Farmer Joe sold his farm for. They're looking at the oil field transactions because in North Dakota, in the Bakken, there is a market for those types of transactions. Even this federal district court on a case that came up to this court on appeal, not on the reasonable amount of attorney's fees, but entitlement to attorney's fees under the Natural Gas Act, an eminent domain case, the district court allowed WBI versus a number of acres of land, WBI energy transmission. The district court case has a Lexus site of 2024, U.S. District Lexus 65381. The case that came up to this court, WBI energy transmission is 132F 4th, 1058. That's the one I was on? It was, Your Honor. In that WBI case, the district court again allowed us to use other pipeline easements as our evidence of damages. What I will say is opposing counsel submitted the Bang case, another case with Continental under this act that went up to the North Dakota Supreme Court. I don't read that case quite the same, but what I will say is that it doesn't always turn out that you can get that kind of evidence in in one of these cases, and that's what those plaintiffs in the Bang versus Continental case faced. What I'll say is that you have to work hard to get that kind of evidence in at a trial in these kinds of cases, and they didn't do it, but I did, and I have, and it takes work. I have tried these cases like I tried the Fisher case and gotten five cents a barrel based on Continental's own transactions. Is that the sort of work that was going on in this case? Yes, Your Honor. And the judge did say something about our damages theory, and he said we should have gotten an appraiser earlier. I respectfully disagree with the judge because we also didn't get to recover the fees for that appraiser, and that cuts pretty significantly into our damages award, especially when the damages award is $76,000, and an appraiser that can do this kind of an analysis costs $10,000 to $20,000. Let me ask you, did your views on the district court setting the Lodestar amount, you submitted an amount accrued, and then there was the reduction in your request based on the in the weeds, I think, you know, the acknowledgment or suggestion to the district court that discovery maybe got out of hand, my words, not yours. But the district court set the Lodestar at the higher amount that you weren't requesting. Why isn't that the sort of error that we should just sit in the back and say to the district court, because there was no explanation for that really, and as I understand it, the Lodestar standard is reasonably expended. You could interpret your in the weeds as saying these weren't reasonable. Why is that wrong, what I just repeated there or suggested to you? Had the judge accepted my discounted number, it would not have been enough for Continental, and we would have been here, and Continental would have been saying that the judge was acting arbitrarily by accepting that number. So the judge did exactly what he should do, which is... Well, the judge could accept your number to start with and then do the analysis about whether there were further reductions required, right? But in this case, the district court started with a number that not even you thought was reasonably expended. But you have to also look at what I said when I offered that $100,000 because I didn't say it wasn't reasonably expended. I was trying to avoid a fight that would make its way all the way up to the Eighth Circuit. Right. But what did you say? What I said was Continental has been the opposition in three significant cases of this type in the past few years, and the undersigned can recognize that certain fights would have been better left behind regardless of who was ultimately right or wrong. Because of this, the Richners, and in reality, the undersigned, given the intent to make it right himself, discounted their total request in the amount of $100,000, and this is the critical part, to recognize the difference between fees reasonably incurred and those that another party is required to reimburse. I wasn't saying they weren't reasonably incurred. I was saying that I recognized that I had been fighting with I don't know what the district court thought of either of those numbers. Did it make a finding that the higher number was reasonably incurred or not? Did it just start the analysis at that point? It started the analysis as it should, which is with the total hours submitted, which were submitted on the invoices. And what it did is it did not reduce the ultimate load star based on the Big Pines factors, but it did reduce the hours that it believed were reasonably incurred. And it very specifically reduced by 164.5 hours under the Hensley analysis. It reduced those fees for discovery fights we got in. And it also looked at block billing entries and said, it appears there were other things billed that are included with this. But because of the documentation, I'm not going to go looking for how to do that. And so it simply reduced all of those hours in those block billings for the discovery fights we got into. It also further, it cited to the Jensen-Clark case, which is again a Hensley reduction of the reasonable hours, and the district court reduced those hours by another 10% for things like poor documentation and for delay. And so the district court conducted the load star analysis by looking at here's the hours submitted by affidavit on the invoices. It reduced that time to what it determined was a reasonable amount of time. It also went exhaustively through our invoices and our costs, and it took out very significant expenses for the appraiser that Continental hadn't even asked it to, because it was conducting its own independent analysis under the correct factors. I also want to note on that, specifically with respect to Big Pines, what the Supreme Court said about that. It said, first off, when determining the reasonableness of an award of attorney's fees, the load star amount, which is what the court got to, is presumed to be the reasonable fee. The court cited to those factors, and then it said, although this court has adopted guidelines to determine a reasonable award of attorney's fees, we also have recognized the decision rests in the sound discretion of the district court. And finally, it said, the district court was not required to make findings on every factor to determine reasonableness, so long as this court is able to discern the basis for the  The amount that Judge Treanor got to is the presumptively reasonable award of fees in this case, and he showed his analysis, and his conclusion under the Big Pines factors was that they didn't justify a departure. And I want to return briefly to that, because as I was saying, the amount of fees in these cases, because there's often small amounts of acreage involved, those fees are always going to be significantly more. Even Continental set its own fees, just for outside counsel, not counting all the hours inside counsel put into this case, and inside counsel said they managed the case. Just the outside is $147,000, that's twice the recovery in Murphy. They agree there's going to be multiples of the compensation for reasonable fees in these cases, and that's always the case. There was a bill in the North Dakota legislature in 2023, and it was going on while these two cases were being actively litigated, and shortly after the district court's opinion in the Fisher case. And that bill tracked very closely with Continental's concerns here, and the Petroleum Council testified in support of that. And what the bill sought to do was to put a cap on the attorney's fees under the Surface Damage Act at the amount of the compensation award, and allow for a mid-litigation offer to cut off the ability to recover attorney's fees if not accepted. And the North Dakota Legislative Assembly rejected both of those. And my point with that is that it did so because these things happen because that's the point of the act, and that's how it's supposed to work. The idea was to incentivize offers up front from the operators, and when you look at the evidence that we submitted in our appraisals, there are a few things that are simply untrue that Continental is saying. It is saying that we caused the delay because it couldn't settle with us until we got the appraisals, and it's saying that the stuff we got through discovery wasn't used by our expert. Those are false statements. In the Murphy appraisal, you can look at the appraisal, four of the eight comps used by the appraiser were from the jet gathering system, the very pipeline system that was put in on the Murphy property. One of those was from the neighbors across the road from the Murphys, paid $300 a rod, and that property was very similar. They even board near some trees just like they did on the Murphy property on that one. Continental is claiming it couldn't settle despite the fact that our appraiser was using their own transactions as comps. In the Richner case, we disclosed all of the other agreements, several of which the appraiser and Richner ended up using. We disclosed those with our Rule 26 disclosures, and they show what other operators are paying. More than Continental. And what those clients wanted was the going rate out there. And there is precedent, and there are ways that you can use that to show what the actual damages are on an individual property. You have to do some work to do that. You can't just throw them up and say, look at what these people got. I want the same. It doesn't work that way. It is more complicated. You have to understand evidence. But you can get that evidence in, and it is used in these cases. And the courts have allowed that in North Dakota. So our appraiser did use some of that other evidence, and we did have to do research in order to get that evidence, not only into the record, but to talk to an appraiser and have an appraiser utilize that is novel. But it has been used in actual cases. And so Continental had that information the whole time. They didn't need to wait for our appraiser to say what we had been telling them for years that we wanted. In their mid-litigation offer, by the way, they claim that mid-litigation they made these offers. What they're not saying about those is that that included attorney's fees, and the attorney's fees were significantly more than what they were offering. And so if you even took what we ultimately recovered, plus the actual attorney's fees at that time, to accept that offer, our clients would have had to lose tens of thousands of dollars. And so it was simple economics for the clients to not accept. I recognize in these cases for that surface owner, once you're in litigation, you need to recover your fees, and that does make it a little harder to settle if you're not able to both get the fees and the compensation you're seeking. But that problem is a problem for the operator, because the way they set this statute up was to incentivize the operators to make the offer up front to avoid that litigation. And that's not what Continental did here. Thank you, Your Honors. Is there time? I talked through my 15 minutes. If the court would give me a minute or two. I'll give you a minute. Thank you. Very, very briefly, Your Honor. All I want to address on rebuttal is that this panel specifically has had involvement in two very recent cases that I think are directly on point. Judge Loken and Judge Kobush, you were both on the Beckler opinion, and Judge Loken, you wrote it, discussing attorney's fees after a significant reduction that was done. And in that case, the party seeking attorney's fees made a similar argument that's being made here, which is, don't punish us as the landowner. Otherwise, attorneys won't take these cases. And this court rejected that same argument in upholding a significant reduction in fees, finding that it's the reasonable fee that matters and nothing beyond that. And of course, I want to end on the Fisher case, because this panel has been on top of that issue already. But Fisher involved constitutional issues, issues of first impression, expert depositions, a full-on trial on the merits, three summary judgments, and it was $250,000 in attorney's fees. And this case, with none of those issues, without a trial, was basically four times that, without reason. Thank you. Thank you, counsel.